One of the plaintiffs testified, that in September, 1870, he made a contract with one W. W. Pegram, who was then acting as the local agent of defendant at the depot, in Charlotte, for the reception and transportation of cotton at that place for New York, at the rate of $2.78 per bale from Charlotte via Charleston to New York, from that time to the 1st of January, 1871. The plaintiffs were cotton buyers and in pursuance of the contract delivered to defendants 592 bales of cotton, which were shipped at that rate. That on the 11th October, plaintiffs were notified by said agent that the defendants refused to carry *Page 439 
any more at that rate, and claimed the right to do so because no such alleged contract had been made. The plaintiffs offered to deliver cotton to defendants after the refusal, for shipment to New York, and were ready to fulfill the contract on their part, but defendants refused to receive and ship the same. That from the 11th of October, 1870, to the 1st of January, 1871, plaintiffs bought and shipped to New York over other railroad routes 3,528 bales of cotton, 611 of which they had to pay at the rate of $3.50per bale.
Pegram, the agent, testified that he made no such contract as above stated, and had no authority as agent to make any such contract, as testified to by the plaintiff that on the 28th of September, 1870, he showed one of the plaintiffs a telegraphic dispatch, of which (543) the following is a copy, viz:
CHARLESTON, Sept. 28th, 1870.
W. W. Pegram: We will maintain those rates until January 1st, unless you can do better.
E. H. BARNWELL.
That on the 27th of said month, the witness had telegraphed to said Barnwell to know if the railroad and the shipping line from Charleston to New York would co-operate with defendants in conveying cotton from Charlotte to New York for $3 per bale; that he informed the plaintiff of the contents of both dispatches, and offered to contract with him for the carring of his cotton upon those terms, which proposal he refused to accept. That the only authority he had to make any contract for the carrying of cotton to New York, was what was contained in said telegram and certain letters, (which, as the case was decided on another point,) are unnecessary to set out. This witness, Pegram, further stated, that in or about the early part of September, 1870, the defendant had carried some cotton for plaintiffs from Charlotte to New York, via Charleston, at 275 per bale.
C. H. Elms stated that on some occasion, when, he could not say, he was at the depot when one of the plaintiffs, Mr. McCauley, had a conversation with the witness, Pegram, and offered to ship a lot of cotton over the defendant's road according to a contract wherein he alleged he had for its shipment over defendant's road with Pegram. This witness was unable to state what the contract was. Defendants excepted to this testimony; it was ruled competent by the Court.
One Wilson McComb, a colored man, testified that he was in the employment of the plaintiffs, and marked and prepared their cotton for shipping; that on one occasion he heard Pegram say, that he had made a contract for the shipping of plaintiff's cotton, which would relieve *Page 440 
him of the trouble of trucking the cotton on the platform. (544) When this conversation occurred, he could not say.
His Honor was asked by the defendant to charge, that Pegram, as a mere local agent, had no authority to make such a contract as stated by McCauley, one of the plaintiffs. That the jury must decide the question, as to whether there was such a contract by examining and conciliating all the testimony in the case. That the testimony of McComb as to the declaration of Pegram, could only be used as a means of testing the truth of Pegram's statement; and that if the jury believed that Pegram had given a correct account of the matter of his arrangement with the plaintiffs, they could not recover.
His Honor charged that Pegram had a right to make the contract, testified to by McCombs, and as to the other prayer of defendant, the Court did not respond to it.
The jury returned a verdict for the plaintiffs. Rule for a new trial granted and discharged. Judgment in accordance with the verdict, and appeal by the defendant.
(The plaintiffs filed an amended statement of the case in some particulars, which not being pertinent to the point decided, is omitted.)
The plaintiff alleges that he made a contract with the defendant, through his agent, Pegram, to transport his cotton to market at a given price, and that the defendant failed to comply with the contract, by reason of which plaintiff was injured, c. The defendant denied that Pegram was authorized to contract, or that he did in fact contract.
The power in Pegram to contract seems to be clear. He was the local agent at the depot from which the plaintiff's cotton was to be shipped, and was in the habit of making contracts for transportation with the plaintiff and others, and the telegrams, which are a part of the case, show that he was authorized to contract. We agree (545) with his Honor in that.
Plaintiff swore upon the trial that he did make the alleged contract with Pegram. Pegram, for the defendant, swore that he did not. The plaintiff then introduced two witnesses, McCombs and Elms, who testified that after the contract was alleged to have been made, they heard Pegram say that he had made a contract with plaintiff. The testimony of McCombs and Elms was clearly competent to *Page 441 
contradict and discredit Pegram, but it was not competent for the purpose of proving the contract. And yet it was introduced generally. The defendant could not object to the competency of the declarations of Pegram, because they were competent to discredit him, but the defendant had the right to have the jury instructed, that while the declarations of Pegram, as proved by McCombs, were competent to discredit him, yet they were not competent to prove the contract. And the defendant asked for this instruction and his Honor refused to give it. In 1 Green. Ev. sec. 113, note 2 on page 134, it is said, that "whether the declaration or admission of the agent made in regard to a transaction already passed, but while his agency for similar objects still continues, will bind the principal, does not appear to have been expressly decided, but the weight of authority is in the negative." Numerous cases are cited. That is our case. We have decided the same question in the same way at this term in the case of McComb v. RR, ante, 178.
There is error.
PER CURIAM. Venire de novo.
Henry v. Willard, 73 N.C. 43; Darlington v. Telegraph Co. 127 N.C. 450.